# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Jose L. Lebron
_____ ,
                    Plaintiff,

v.

State of CT. Dept. Of Social Services
_____ ,
                    Defendant(s).

Case No. 3:22-cv-00155 (VAB)
(To be supplied by the Court)

JAN 27 2022 PM 2:48
FILED-USDC-CT-HARTFORD

## **COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

1.    Plaintiff resides at the following location: 28 Jensen Drive, Middlebury, CT 06762

2.    Defendant(s) reside(s) at the following location [Attach additional sheets if more

space is required]: 55 Farmington Avenue, Hartford, CT 06105

3.    This action is brought pursuant to [Check all spaces that apply to the type of

claim(s) you wish to assert against the Defendant(s)]:

☒    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et
     seq., for employment discrimination on the basis of race, color, religion, sex, or
     national origin.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. §
     2000e-5(f).  Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g)
     and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

☒    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621,
     et seq., for employment discrimination based upon age.  Jurisdiction is alleged
     pursuant to 28 U.S.C. §§ 1331, 1337, and/or 1343.  Equitable and other relief is
     sought under 29 U.S.C. §§ 626(b) and (c) or  §§ 633a(b) and (c).

     My Year of Birth is: 1965 _____ .

☐ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq., for employment discrimination on the basis of a disability against an employer which constitutes a program or activity receiving Federal financial assistance. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 and/or 1343. Equitable and other relief is sought under 29 U.S.C. § 794a.

☐ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq., for employment discrimination on the basis of a disability against a private employer. Jurisdiction is specifically conferred on this Court by 42 U.S.C.§ 2000e-5(f). See 42 U.S.C. § 12117(a). Equitable and other relief is sought pursuant to 42 U.S.C. § 2000e-5(g). Id.

4.    The acts complained of in this suit concern [Check all spaces that are applicable to your claim(s)]:

(A)    ☐    Failure to hire me.  I was refused a job on the following date(s): ____
_____.

(B)    ☐    Termination of my employment.  I was terminated from my employment on the following date: _____.

(C)    ☒    Failure to promote me.  I was refused a promotion on the following date(s): June 20, 2021 _____.

(D)    ☐    Other acts as specified below: _____

_____
_____
_____
_____
_____

5.      The conduct of the Defendant(s) was discriminatory because it was based upon: race [☒], color [☐], religion [☐], sex [☒], age [☐], national origin [☐] or disability [☐].  [Please check all applicable bases for your claim of discrimination and explain further, if necessary]: _____

_____

6.      The facts surrounding my claim of employment discrimination are as follows [Attach additional sheets, if necessary]:

See Attached

_____

_____

_____

_____

_____

_____

_____

_____

7.      The approximate number of persons who are employed by the Defendant employer I am suing is: 500 _____.

8.      The alleged discrimination occurred on or about the following date(s) or time period: June 20, 2021 _____

9.      I filed charges with the:

☐      Equal Employment Opportunity Commission

☒      Connecticut Commission on Human Rights and Opportunities

10.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue

letter **(copy attached)**, which I received on or about the following date: November 7, 2021.

**[NOTE:** If you filed charges with the EEOC or the CHRO, you **MUST** attach a copy of

the Notice of Right to Sue letter for this Court to consider your claim(s).  Failure to do so

may result in delaying consideration of your claim(s).]

11.     The EEOC or the CHRO determined that there was no probable cause to believe

that  discrimination occurred.  My reasons for questioning that determination are as

follows [Attach additional sheets, if necessary]: CHRO did not give any merit to independent

audits performed by State of CT. Independent auditors. The auditors had consecutive findings of white

female being illegally promoted into a job where said female did not meet requirements of job

specifications.

12.     If relief is not granted, I will be irreparably denied rights secured under the law(s)

referred to in Item Number 3, above.

13.     WHEREFORE, Plaintiff(s) pray(s) that:  The Court grant such relief as may be

deemed appropriate, including [**NOTE:**  While all of the forms of relief listed below may

not be available in a particular action, you should place a check next to each form of

relief you seek.):

☐      Injunctive orders (specify the type of injunctive relief sought): _____

_____;

☒      Backpay;

4

☐    Reinstatement to my former position;

☒    Monetary damages (specify the type(s) of monetary damages sought): __

Punitive and compensatory                                                                      ;

☐    Other (specify the nature of any additional relief sought, not otherwise

provided for on this form): _____

_____ ;

AND costs and attorneys' fees.

### JURY DEMAND

I hereby    DO ☐    DO NOT ☒ demand a trial by jury.

_____      _____
Original signature of attorney (if any)    **Plaintiff's Original Signature**

_____      Jose L. Lebron
Printed Name and address                   Printed Name and address
                                                          28 Jensen Drive

_____      Middlebury, CT 06762

( )                                                    203-233-6420
Attorney's telephone                         Plaintiff's telephone

_____      65Flaco@gmail.com
Email address if available                  Email address if available

Dated: _____

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___Hartford, CT___ on ___1\27\2022___.
            (location)                (date)

                                 **Plaintiff's Original Signature**

(Rev. 3/23/16)

October 7, 2021

I am asking for CHRO to reconsider their decision regarding Jose Lebron (complainant) v. SOC, DSS CHRO No. 2110063 EEOC 16A-2020-01497. Below is the evidence which outlines the reason for this decision to be overturned.

A) Mr. Gilbert made a statement regarding the review of questions asked by the interview panel that was false. He indicated the interview panel reviews the questions before interviews are conducted. I am not sure what was done in his prior department, but review of questions by interview panels are not done in DHS. I have been asked and participated in multiple interviews as a panelist and never was asked to review the questions before conducting interviews. This is an attempt by management to deflect from the truth that the questions for this position were tailored to fit the targeted white female resume by Mrs. McEvoy. Attached are two affidavits (see exhibits A-1 and A-2) from a current manager and a co-worker both of whom conducted interviews for DHS and their attestation to the practices within DHS.

B) Comment 10 within the investigator's ruling regarding manager makeup of DHS. Complainant stated to investigator that there is only one black manager within DHS. The promotional document submitted by DSS further proves the complainant assertion that DHS only promotes white managers. There are three managers who were promoted on this document who identify as white. (See attached exhibit B-2)

C) Comment 11 within the investigator's ruling regarding two consecutive audits performed by unbiased State Auditor's. The complainant was part of the interview panel for the Principal Cost Analyst position where said white female was promoted illegally as specified in attached 2018 audit (see attached exhibit C-1 for finding). The minimum qualification – special experience section of this job description (see attached exhibit C-2 job description) states One (1) year of the General experience must have been in an advanced professional for State Employees, experience in an advanced professional capacity is interpreted as experience at the level of an Associate Accountant or above. The said white female was at a level far below this requirement. With regards to 2020 unbiased State auditor's finding "incomplete candidate screening process" (see attached exhibit C-3 for finding). The agency agreed with the finding. Whether or not the said white female was qualified would never be known. The fact that the said white female was promoted without thoroughly checking her prior work history should be questioned as intent of DHS discriminatory motivated promotions.

D) Comment 12 within the investigator's ruling with regards to FAMII position. Complainant mentioned in the hearing that he was the whistle blower and had constant contact with auditor regarding 2020 audit (See attached email D-1). Based on the email it directly named her as the subject of FAMII audit finding.

E) Mrs. McEvoy testified that Nicole Godburn created PCMH+. Attached is an email (see exhibit E-1) from an DHS employee who was heavily involved in the creation of PCMH+. This email strengthens complainant's assertion that Ms. Godburn embellished on her involvement with PCMH+ when the only thing she was regarding this program was as the employee states "a paper pusher". As complainant indicated Mrs. McEvoy assertions that Ms. Godburn created this program was in fact an attempt for to justify her steering of this position to the said white female.

Complainant is submitting his most current employee service rating (see exhibit F-1) as further evidence that Ms. Godburn was given this position base on her privilege.  If you look at section of quality of work, it acknowledges complainant experience in value-based reimbursement policy.  In Mrs. McEvoy testimony she went on and on how since 2019 Ms. Godburn had been working on value-based initiative but never once mentioned the complainant experience.

Based on the above evidence the complainant is asking CHRO to reverse their decision.  Complainant has provided two consecutive unbiased audits, statements from current DHS employees and documents provided DSS that supports his position of discrimination.  The only evidence that DSS has submitted is the testimony from the interview panel which should be look at with suspicion.

Sincerely,

Jose L. Lebron



**State of Connecticut**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
Capitol Region Office ~ 450 Columbus Boulevard, Suite 2, Hartford, CT 06103
*Promoting Equality and Justice for all People*

September 28, 2021

Via Email: 65flaco@gmail.com
Via Regular Mail

Jose LeBron
28 Jensen Drive
Middlebury, CT 06762

Via Email: graham.shaffer@ct.gov

Graham Shaffer
Staff Attorney
State of CT, Department of Social Services
55 Farmington Avenue, 11th Floor
Hartford, CT 06105

Via Email: stephanie.a.wainwright@ct.gov

Stephanie Wainwright. Esq.
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 6106

RE:   **NOTICE OF NO REASONABLE CAUSE FINDING**
      **Jose LeBron v. SOC, DSS**
      **CHRO No. 2110063**
      **EEOC No. 16A-2020-01497**

Dear Parties:

The investigator of this agency assigned to the above-entitled complaint has completed the processing of the complaint and the complaint has been closed today as No Reasonable Cause Finding.

A copy of the written summary of the findings is enclosed.

The Complainant may apply for <u>reconsideration</u> of the disposition by <u>filing</u> at the Commission's Regional office (see above for address) within fifteen (15) calendar days from the **date of this letter**, a written application <u>stating specifically the grounds</u> upon which the application is based and accompanied by all relevant documents in support thereof. A request for reconsideration <u>must</u> be rejected as untimely without review of the specific grounds stated if it is not **received** by the Commission within fifteen (15) days of the mailing of this notice. It is the Complainant's responsibility to file a timely request. An application for reconsideration may be granted or denied at the discretion of the Commission. Any request for reconsideration must be submitted to the regional office issuing this notice. A copy of the Complainant's request for reconsideration must be emailed to the Respondent and the Respondent's attorney (if any) at the address listed above. The Complainant should certify that he or she has done so in the request for reconsideration.

CHRO No. 2110063
NRC Finding Letter
September 28, 2021
Page 2

Instead of filing a <u>timely</u> request for reconsideration, the Complainant may appeal this disposition to the Superior Court of the State of Connecticut.  Any appeal must strictly comply with all of the applicable statutory procedures, requirements and timeframes.  The Complainant may wish to consult an attorney regarding the proper filing of an administrative appeal.

Sincerely

Ann Galer
Human Rights Investigator

ag/dam

Enclosure

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**



**DRAFT FINDING OF NO REASONABLE CAUSE**

Jose LeBron
**COMPLAINANT**

VS.

State of Connecticut
Department of Social Services
**RESPONDENT**

| CHRO NO.: | 2110063 | DATE | AUGUST 26, 2020 |
|---|---|---|---|
| EEOC NO.: | 16A-2020-01497 | FILED: | |

**PARTIES**

**COMPLAINANT:**

Jose LeBron
28 Jensen Drive
Middlebury, CT 06762
Via Email:
Via Regular Mail

**RESPONDENT'S CONTACT:**

Graham Shaffer
Staff Attorney
State of CT, Department of Social Services
55 Farmington Avenue, 11ᵗʰ Floor
Hartford, CT 06105
Via Email:

**RESPONDENT'S COUNSEL:**

Stephanie Wainwright. Esq.
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 6106
Via Email:

## JURISDICTION

☒    The investigator concludes that the Commission has jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.

☐    The investigator concludes that the Commission does not have jurisdiction to receive, investigate and issue a determination upon the merits of the complaint. Therefore, this complaint is dismissed due to the lack of jurisdiction.

## FINDINGS OF FACT

1.    Complainant (Jose LeBron) who is a Hispanic male of Puerto Rican origin, and who is employed as a Principal Cost Analyst for Respondent (State of Connecticut, Department of Social Services) applied for and was denied the Fiscal Administrative Manager II ("FAMII") promotion in June 2020.

2.    Complainant interviewed with Kate McEvoy, White, the Director of Health Services, on February 25, 2020. The interview was also conducted by Michael Gilbert, White, Deputy Director for the Department, and Anthony Judkins, African American, Social Services Manager.

3.    The Department received 56 applications for the position, only seven (7) of which met the minimum qualifications for the job and were offered an interview. Of these seven (7), three (3) applicants declined an interview. Both the Complainant and the successful candidate, Nicole Godburn, White, non-Hispanic, non-Puerto Rican, female, were interviewed.

4.    During the interview, the candidates were all asked a series of identical questions that were approved by the Department's Human Resources and Affirmative Action units and interviewers took notes to document the assessments of the candidates' answers. A review of the questions and interview notes do not point to any discriminatory animus. Moreover, when questioned at fact-finding, Complainant acknowledged that none of the interviewers' questions suggested discriminatory motive based on any protected class bases.

5.    All of Respondent's witnesses testified that a preferred qualification for the position was experience with a value-based payment approach, as identified in the job posting. Complainant acknowledged that he did not have experience in medical value-based payment approaches and further admitted that he failed to mention any general experience with value-based payment approaches during the interview.

6.    In contrast, Respondent's witnesses consistently testified that Ms. Godburn demonstrated her experience with value-based payment approaches during her interview. A careful reading of the interview notes supports Respondent's position that Ms. Godburn articulated her experience in this area during the interview.

7.  Although Complainant contends that experience with value-based payment approaches was over-emphasized, this belief was directly refuted by both Ms. McEvoy and Mr. Gilbert who testified that expansion of a value-based payment approach was a strategic future direction for the agency.

8.  There is similarly no evidence, as alleged by Complainant, that Ms. Godburn lacked the requisite experience with the value-based payment model and/or that the selected candidate was treated more favorably because she was previously assigned value-based payment work. To this point, Respondent offered undisputed evidence that the assignment of such work was assigned back in 2016, which is not only time-barred, but also consistently testified that it was authorized by a former manager (whom Complainant conceded he had no issues with) who did not sit on the hiring panel.

9.  Notwithstanding that Complainant failed to provide any timely evidence that he was given less favorable work assignments due to his protected classes, he testified that Respondent gave him significant responsibility in a large project involving a hospital settlement.

10. Complainant, too, claimed that there was only one other manger who identifies as black or brown in color as further evidence of discrimination, however, a review of the racial make-up of the employees within Respondent's Health Services Division disproves this.

11. Complainant also relied on the reports of the Auditors of Public Accounts as further proof that he was discriminatorily denied the promotion. Specifically, neither the 2018 nor 2020 reports found the selected candidates were unqualified for the positions. Rather, the 2020 report merely indicates that the agency may have failed to verify the FAMII candidate's pre-state experience. To the extent that Respondent may have failed to verify pre-state service experience, there is no evidence that the selected candidate was treated differently or more favorably than Complainant or that this was done based on any discriminatory intent.

12. Further, the production of emails provided by Complainant did not specify which FAMII position was potentially at issue in the report. In addition, Complainant's witness, a former White female employee of Respondent, who was similarly denied promotion(s), also offered no specifics.

13. Although Complainant has made other specious allegations, none of which were determined to be connected to his ancestry, national origin, gender, or any other protected class bases.

## DETERMINATION

☐     After reviewing all of the evidence in the Commission's file, the investigator concludes there is **reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

☒     After reviewing all of the evidence in the Commission's file, the investigator concludes that there is **no reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

Dated and entered this _____ day of _____, 2021.

**COMMISSION ON HUMAN RIGHTS
AND OPPORTUNTIES**

_____
Ann Galer
HRO Representative

**Lebron, Jose**

| | |
|---|---|
| **From:** | Winstead, Roderick M |
| **Sent:** | Wednesday, October 6, 2021 1:18 PM |
| **To:** | Lebron, Jose; Leary, Michael J.; Massari, Hector |
| **Subject:** | Re: Can you provide a attestation to me regarding interview practices? |

I had input only when it was my staff, otherwise I was just presented with the questions.

Rod W

Get Outlook for iOS

**From:** Lebron, Jose <Jose.Lebron@ct.gov>
**Sent:** Wednesday, October 6, 2021 1:14:58 PM
**To:** Leary, Michael J. <michael.leary@ct.gov>; Massari, Hector <Hector.Massari@ct.gov>; Winstead, Roderick M <Roderick.Winstead@ct.gov>
**Subject:** Can you provide a attestation to me regarding interview practices?

I was wondering if both you provide a attestation of interview practices within DHS?  I am sorry for the last minute request be I need by 3 O;clock today.   I was wondering if when you were ask to be on an interview panel if you had any input on the questions being ask.

B - 2

## Lebron, Jose

| | |
|---|---|
| **From:** | Massari, Hector |
| **Sent:** | Wednesday, October 6, 2021 1:32 PM |
| **To:** | Winstead, Roderick M; Lebron, Jose; Leary, Michael J. |
| **Subject:** | RE: Can you provide a attestation to me regarding interview practices? |

Good afternoon Jose,

Just saw your email, I am having problems with my VPN connection today and just finished rebooting my laptop. As far as the interview questions, in the panels that I have been part of I had no input in the interview questions being asked. I was presented with a set of questions and the interview panel decides who is doing the first two or three questions then next person will ask the next set of questions...

Thanks,
Hector

Hector Massari, RN
Connecticut Department of Social Services
Division of Health Services
55 Farmington Avenue
Hartford, CT 06106


**From:** Winstead, Roderick M <Roderick.Winstead@ct.gov>
**Sent:** Wednesday, October 6, 2021 1:18 PM
**To:** Lebron, Jose <Jose.Lebron@ct.gov>; Leary, Michael J. <michael.leary@ct.gov>; Massari, Hector <Hector.Massari@ct.gov>
**Subject:** Re: Can you provide a attestation to me regarding interview practices?

I had input only when it was my staff, otherwise I was just presented with the questions.

Rod W

Get Outlook for iOS

**From:** Lebron, Jose <Jose.Lebron@ct.gov>
**Sent:** Wednesday, October 6, 2021 1:14:58 PM
**To:** Leary, Michael J. <michael.leary@ct.gov>; Massari, Hector <Hector.Massari@ct.gov>; Winstead, Roderick M <Roderick.Winstead@ct.gov>
**Subject:** Can you provide a attestation to me regarding interview practices?

I was wondering if both you provide a attestation of interview practices within DHS?  I am sorry for the last minute request be I need by 3 O;clock today.   I was wondering if when you were ask to be on an interview panel if you had any input on the questions being ask.

| EEO-4 Cat | Name | Ethnic Grp | Sex | Action | Action Reason Description | ACTN DATE | Pos Descr | Country | Location Descr |
|---|---|---|---|---|---|---|---|---|---|
| Officials and Administrators | | WHITE | M | PRO | Promotion By Reclassification | 3/9/2018 | SSMdclAdmnMgr | | CO-Alternate Care |
| Officials and Administrators | Filippini,Laurie R | WHITE | F | PRO | Promotion By Reclassification | 7/13/2018 | SSPrgmAdminMgr | | ACU Home Community Based Srv |
| Professionals | Alves,Kristen Jean | WHITE | F | PRO | Promotion to Target/Position | 10/28/2016 | EligibilityServicesWorker | | ACU Home Community Based Srv |
| Professionals | Andrukiewicz,Manusz | WHITE | M | PRO | Promotion to Target/Position | 5/7/2020 | EligibilityServicesWorker | POL | ACU Home Community Based Srv |
| Professionals | Arrington,Brenda J. | BLACK | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Boebel,Anellyse L | HISPA | F | PRO | Promotion to Target/Position | 5/7/2020 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Bryan,Charles N. | BLACK | M | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | JAM | CO-Alternate Care |
| Professionals | Carangelo,Beth A | WHITE | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Carrier,Stacey | WHITE | F | PRO | Promotion to Target/Position | 2/28/2020 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Chase,Paul C | WHITE | M | PRO | Promotion By Reclassification | 3/7/2017 | PublicAssistanceConsultant | USA | CO-Alternate Care |
| Professionals | Cooper,Melva F | BLACK | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | JAM | CO-Alternate Care |
| Professionals | Cronin,Patricia E. | WHITE | F | PRO | Promotion By Reclassification | 7/25/2018 | PlanningSpecialist | | CO-Integrated Care |
| Professionals | Cunningham,Amanda M | WHITE | F | PRO | Promotion to Target/Position | 3/8/2019 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Doiron,Amelia R. | WHITE | F | PRO | Promotion to Target/Position | 2/7/2018 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Femia,Marie P | WHITE | F | PRO | Promotion By Reclassification | 1/30/2019 | PrincipalCostAnalyst | | CO-Cert of Need/Rate Setting |
| Professionals | Flynn,Michael J. | WHITE | M | PRO | Promotion By Reclassification | 7/27/2018 | HealthProgramAssistant2 | DEU | CO-Medical Operations |
| Professionals | Fox,Deborah E. | WHITE | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Division of Health Services |
| Professionals | Garcia-Young,Erica L | HISPA | F | PRO | Promotion By Reclassification | 4/23/2019 | HealthProgramAssociate | | CO-Integrated Care |
| Professionals | Godburn,Nicole M. | WHITE | F | PRO | Promotion By Reclassification | 1/30/2019 | PrincipalCostAnalyst | | CO-Cert of Need/Rate Setting |
| Professionals | Godburn,Nicole M. | WHITE | F | PRO | Promotion By Reclassification | 6/29/2020 | Fscl/AdminMgr2 | USA | CO-Cert of Need/Rate Setting |
| Professionals | Gulino,Anthony V. | WHITE | M | PRO | Promotion to Target/Position | 4/11/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Hardy,Shawn P. | BLACK | M | PRO | Promotion By Reclassification | 3/6/2017 | EligibilitySvcsSpec | USA | ACU Home Community Based Srv |
| Professionals | Harvey,Mark A. | WHITE | M | PRO | Promotion to Target/Position | 1/20/2016 | HealthProgramAssistant1 | USA | CO-Medical Operations |
| Professionals | Hunter,Kristin J | BLACK | F | PRO | Promotion By Reclassification | 2/7/2017 | HealthProgramAssistant2 | | CO-Integrated Care |
| Professionals | Hunter,Kristin J | BLACK | F | PRO | Promotion By Reclassification | 2/14/2019 | HealthProgramAssociate | | CO-Integrated Care |
| Professionals | Jackowski,Patricia J. | WHITE | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Jimenez,Dawne | WHITE | F | PRO | Promotion By Reclassification | 11/28/2016 | HealthProgramSupervisor.. | | CO-Medical Operations |
| Professionals | Johnson,Nicole B. | BLACK | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Juliano,Melissa E. | HISPA | F | PRO | Promotion to Target/Position | 1/25/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Kalarickal,Mathew M | PACIF | M | PRO | Promotion By Reclassification | 1/26/2017 | EligibilitySvcsSupv | USA | ACU Home Community Based Srv |
| Professionals | Lebron,Jose L | HISPA | M | PRO | Promotion By Reclassification | 6/14/2016 | PrincipalCostAnalyst | | CO-Cert of Need/Rate Setting |
| Professionals | Lustila,Dane S | WHITE | M | PRO | Promotion to Target/Position | 1/20/2017 | HealthProgramAssistant1 | USA | CO-Alternate Care |
| Professionals | Martin,Kenniel K | BLACK | F | PRO | Promotion to Target/Position | 3/24/2016 | Fiscal/AdministrativeOfficer | JAM | CO-Division of Health Services |
| Professionals | Massari,Georgia | WHITE | F | PRO | Promotion By Reclassification | 3/4/2016 | HealthProgramAssistant2 | | CO-Medical Operations |
| Professionals | Massari,Georgia | WHITE | F | PRO | Promotion By Reclassification | 8/13/2018 | HealthProgramAssociate | | CO-Medical Operations |
| Professionals | Mighty-Brown,Rachelle A | BLACK | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Monopoli,Megan Mary | WHITE | F | PRO | Promotion to Target/Position | 1/25/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Orejuela,Elizabeth | HISPA | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Parker-Reilly,Kathleen E. | WHITE | F | PRO | Promotion By Reclassification | 1/20/2016 | HealthProgramAssistant1 | | CO-Medical Operations |
| Professionals | Parker-Reilly,Kathleen E. | WHITE | F | PRO | Promotion By Reclassification | 11/28/2016 | HealthProgramAssistant2 | | CO-Medical Operations |
| Professionals | Pelletier,Tami R. | WHITE | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Percy,Stephen M | BLACK | M | PRO | Promotion to Target/Position | 1/8/2019 | EligibilityServicesWorker | USA | CO-Alternate Care |
| Professionals | Providence,Brenda | BLACK | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Ricciuti,Janice M | WHITE | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Robles,Victor M. | HISPA | M | PRO | Promotion By Reclassification | 4/11/2017 | EligibilitySvcsSpec | USA | ACU Home Community Based Srv |
| Professionals | Saiwocki,Karen M | WHITE | F | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Samuels,Shawnette N | BLACK | F | PRO | Promotion to Target/Position | 8/28/2020 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Schiller,John C | HISPA | M | PRO | Promotion By Reclassification | 8/12/2016 | CommNrsCoord | USA | CO-Alternate Care |
| Professionals | Sirois,Lori Ann | WHITE | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Spina,Elizabeth | WHITE | F | PRO | Promotion to Target/Position | 10/28/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |
| Professionals | Vargas,Teresa | HISPA | F | PRO | Promotion to Target/Position | 2/5/2016 | EligibilityServicesWorker | USA | ACU Home Community Based Srv |

Exh C 1

**Questionable Promotion Practices**

| | |
|---|---|
| *Criteria:* | Section 5-227a of the General Statutes provides that whenever an employee's position in the classified service is reclassified, the promotion of the employee shall be made without examination provided that (1) the employee meets the minimum qualifications for the reclassified position; (2) the employee has received a satisfactory appraisal on the 2 most recent consecutive performance evaluations; (3) the employee has worked at the existing level in the current position for a minimum period of 6 months; and (4) the Commissioner of the Department of Administrative Services (DAS) approves the reclassified position. |
| | DAS General Letter No. 226 -- Promotion by Reclassification provides the procedures and required documentation for promotions through reclassification under Section 5-227a of the General Statutes. |
| *Condition:* | On November 5, 2018, DSS posted a promotional opportunity exclusively within one division at DSS, rather than posting it on a department-wide basis. |
| | On December 10, 2018, DSS sent a promotion letter to 2 employees. On January 16, 2019, DSS submitted information to DAS to demonstrate how the employees met the minimum qualification requirements to be considered for the promotional opportunity. Based on the DSS assumption that DAS would concur with the first part of the request, DSS simultaneously requested the reclassification of the same employees to the promotional opportunity position with an effective date of December 21, 2018. DSS should have requested the proper approvals from DAS prior to sending the employees a promotion letter. |
| *Effect:* | DSS may have excluded interested employees from the promotional opportunity. DSS may not be promoting or hiring the most qualified candidates. |
| *Cause:* | Existing controls did not prevent this condition. |
| *Prior Audit Finding:* | This finding has not been previously reported. |
| *Recommendation:* | The Department of Social Services should follow procedures established by the Department of Administrative Services regarding promotions by reclassification. (See Recommendation 8.) |
| *Agency Response:* | "The Department disagrees with this finding. The Human Resources Division sought out and received direction from the Department of Administrative Services on how to meet the personnel needs of the |

Exh C 2

*Auditors of Public Accounts*

Division. The Department was compliant with the Department of Administrative established policies and procedures. The division for which the opportunity existed is one of the largest within the agency with 154 total employees, with that said the Department believed that those employed at the time within the division possessed the requisite qualifications to satisfy a quality candidate pool for which the most qualified candidate may be drawn from."

*Auditors' Concluding Comments:*

According to the Department of Administrative Services, DSS did not discuss the limited posting scope with DAS. Per DAS, since the positions did not involve new vacancies, DAS recommended that DSS post the promotional opportunity agency-wide, which would have been sufficient for all interested DSS employees to consider. In addition, prior to offering the promotions to the employees, DSS should have obtained necessary approvals from DAS. As a result, at the time DSS offered the promotions, the employees did not meet minimum qualifications for the positions.

## Lack of Performance Evaluations of Managers

*Criteria:*

The performance evaluation process is a method of assessing employee job performance in relation to established standards. Standard business practice advocates that supervisors evaluate employee job performance in writing at least once each year. Generally, the objectives of a performance evaluation are to:

- Provide written feedback to employees

- Document employee performance in organizational records

- Identify training needs of employees and the organization

- Form a basis for personnel decisions

- Facilitate communication between employees and management

*Condition:*

DSS did not perform evaluations for any of the 10 managers selected for review in the last year. DSS did not perform evaluations for 5 of those managers in the last 2 years.

*Effect:*

The absence of written performance evaluations significantly diminishes management's ability to develop employee performance plans, track employee career development, and form a basis for personnel decisions.

Department of Administrative Services



Exh c2

## Department of Administrative Services

### Principal Cost Analyst (6328AR)

$43 20-$55 28 Hourly / $3,456.06-$4,422 76 BiWeekly / $90,203 17-$115,434 04 Yearly

🔔 Notify Me when a Job Opens for the above position(s)

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In the Connecticut Lottery Corporation, Departments of Children and Families, Mental Health and Addiction Services, Social Services and Office of the State Comptroller, this class is accountable for acting as a working supervisor over a team of technical personnel engaged in cost analysis or for independently performing highly complex cost analysis work

## SUPERVISION RECEIVED

Receives general direction from an employee of higher grade

## SUPERVISION EXERCISED

Leads technical, clerical and lower level staff in assigned areas of responsibility

## EXAMPLES OF DUTIES

Plans unit workflow and determines priorities; schedules, assigns, oversees and reviews work; establishes and maintains unit procedures; provides staff training and assistance; conducts or assists in conducting performance evaluations; acts as liaison with operating units, agencies and outside officials regarding unit policies and procedures; may make recommendations on policies or standards; may prepare reports and correspondence; performs related duties as required

CONNECTICUT LOTTERY CORPORATION: Independently performs highly complex cost, revenue and financial analysis functions; coordinates budget preparation process and develops recommendations as to budgeted levels for various revenue and expense categories and line items; reviews accounts and records for budgetary control of corporate expenses and revenues; performs complete general ledger accounting in accordance with Generally Accepted Accounting Principles (GAAP); prepares periodic financial statements for various product groups and operating departments; performs cost benefit and break-even analyses for lottery retailer incentive programs, marketing campaigns and consumer promotional programs; makes recommendations regarding design and modification of incentive programs for entrepreneurial sales staff and monitors program results; creates and applies meaningful expense and revenue allocation schemes using cost accounting principles; provides financial, analytical and statistical feedback to assist in development of strategic sales and marketing plans; analyzes prize liability and unclaimed prizes by game; provides sales and cost analyses, using statistical methods, trends and curve extrapolations to assist management in formulation of corporate policy; assists in compilation of financial data necessary for preparing detailed complex financial statements; acts as liaison with operating units, other state lotteries and lottery associations; may lead staff as assigned; performs related duties as required

DEPARTMENT OF SOCIAL SERVICES: Monitors a team of accountants engaged in cost analysis work of determining per diem rates of reimbursement for Medicaid supported patients or carries out such responsibilities directly; consults with and advises administrators of facilities in preparation and presentation of financial and cost finding reports; analyzes and interprets cost reports and recommended reimbursement rates to administrators; attends and participates in appeals hearings for purpose of performing continuous evaluation of cost trends by analyzing facility expenditures and/or adjustments of expenditures in terms of need, policies, financial objectives and legal requirements and recommends appropriate action; performs related duties as required.

DEPARTMENT OF CHILDREN AND FAMILIES: Monitors a team of accountants engaged in any of the following tasks or carries out such responsibilities directly: cost analysis work of determining per diem rates of reimbursement for children in residential placement, group homes and fee for service rates; consults with and advises administrators of facilities in preparation and presentation of financial and cost finding reports; analyzes and interprets cost reports and recommended reimbursement rates to administrators; attends and participates in appeal hearings for purpose of performing continuous evaluation of cost trends by analyzing facility expenditures and/or adjustments of expenditures in terms of need, policies, financial objectives and legal requirements and recommends appropriate action; independently performs highly complex cost, revenue and financial analysis functions; coordinates budget preparation process and develops recommendations as to budgeted levels for various revenue and expense categories and line items; reviews accounts and records for budgetary control of expenses and revenues; prepares periodic financial statements, performs cost benefit and break-even analyses; provides cost analyses using statistical methods, trends and extrapolations to assist management in formulation of financial and budgetary policy; assists in compilation of financial data necessary for preparing detailed complex financial statements; acts as liaison with operating units; performs related duties as required.

DEPARTMENT OF MENTAL HEALTH & ADDICTION SERVICES: Leads team of professional technical staff engaged in cost analysis work of determining rates of reimbursement for behavioral health services; performs highly complex cost, revenue and fiscal analysis work in determining rates of reimbursement; negotiates rates with providers; consults with and advises agency facilities on financial and cost finding reports; analyzes and interprets cost and revenue reports and recommends reimbursement rates; provides financial, analytical and statistical information to assist in budgeting and rate setting; using statistical methods, trends and forecast models provides information to management; assists in development of highly complex financial reports; coordinates budget preparation process and develops recommendation as to budgeted levels for various revenue and expense categories and facility fund levels; reviews accounts and records for budgetary control of expenses and revenues; prepares detailed complex financial statements; may attend and participate in appeals hearings; may act as a liaison with operating units; performs related duties as required

OFFICE OF THE STATE COMPTROLLER: Monitors a team of accountants engaged in cost analysis, cost reporting or rate setting including preparation of cost allocation plans, determining reimbursement rates for fringe benefits on federal programs and preparing or advising on preparation and negotiation of indirect cost studies; determines weekly per capita cost for patients in state institutions; prepares Medicare cost reports or reviews and approves such cost reports for state hospitals; coordinates Medicare reimbursement plans; determines and negotiates interim Medicare billing rates and rates for Medicaid supported patients in state facilities; maintains records; performs continuing evaluation of cost trends, methods of cost determination and allocation, recommending action as required; interprets constitutional and statutory provisions affecting state financial expenditures and revenues; reviews accounts and records for budgetary control of state expenditures and revenues; assists in compilation of financial data necessary for preparing detailed complex financial statements; provides consultation to state agencies; performs related duties as required

## KNOWLEDGE, SKILL AND ABILITY

Considerable knowledge of principles and practices of business administration; considerable knowledge of principles and techniques of health care budgeting, budget control and cost accounting; some knowledge of research techniques and statistical principles and procedures; considerable oral and written communication skills; interpersonal skills, considerable ability to interpret costing and reporting regulations, some supervisory ability; ability to utilize computer software.

## MINIMUM QUALIFICATIONS - GENERAL EXPERIENCE

Department of Administrative Services

Eight (8) years of experience in technical work in cost accounting or fiscal management
NOTE Fiscal management is defined as professional accounting or auditing work with responsibility for the review and recommendation of financial policies and procedures of a business organization

## MINIMUM QUALIFICATIONS - SPECIAL EXPERIENCE

One (1) year of the General Experience must have been in an advanced professional capacity recommending cost funding policies in a medical, intergovernmental or quasi-public setting.
NOTES:
1 For State Employees, experience in an advanced professional capacity is interpreted as experience at the level of an Associate Accountant or above
2 Intergovernmental is defined as interactions between a state government and the federal government or within or between state government(s)

## MINIMUM QUALIFICATIONS - SUBSTITUTIONS ALLOWED

1 College training may be substituted for the General Experience on the basis of fifteen (15) semester hours equalling one-half (1/2) year of experience to a maximum of four (4) years for a Bachelor's degree.
2 A Master's degree in accounting, business administration or hospital administration may be substituted for one (1) additional year of the General Experience
3 Certification as a Certified Public Accountant may be substituted for one (1) additional year of the General Experience

## SPECIAL REQUIREMENTS

CONNECTICUT LOTTERY CORPORATION: Incumbents must obtain an occupational license in accordance with Section 12-802a of the Connecticut General Statutes

## JOB CLASS DESIGNATION

Classified/Competitive

## OCCUPATIONAL GROUP

(01)-Accounting/Auditing

## BARGAINING UNIT

(16)-ADMIN & RESID (P-5)

## EEO

(2)-Professional

## SALARY INFORMATION

AR 28

## CANCELLATION CLAUSE

This replaces the existing specification for the class of Principal Cost Analyst in Salary Group AR 28 approved effective February 15, 2012 (Revised to modify Substitutions Allowed)

## EFFECTIVE DATE

modified/upgraded to address system design gaps. Since then, the Department believes that adequate controls have been established, including but not limited to:

- Daily monitoring of outstanding inquiries
- System aided ability to track, identify and reassign pending inquiries when staff are absent
- Monthly identification and "scrubbing" of any pending or outstanding inquiries
- Management intervention with issue resolution when necessary
- Supervisory monitoring tool piloted to assess staff compliance with policy and procedures

As for the specific items addressed in the finding, the Department will research the current statuses and will conduct follow up corrections where necessary."

## Incomplete Candidate Screening Process

*Criteria:*    Job descriptions include general and special experience requirements necessary to perform the duties for a specific job. Candidate representations of work experience and professional credentials are a key factor in hiring and promotion decisions. Verification of these representations is a critical control of the hiring and promotion process.

*Condition:*    DSS promoted an employee without confirming the candidate met the special experience requirement for the position. The employee's former position was insufficient to meet the special experience requirement. The employee's personnel file lacked sufficient documentation that DSS verified prior non-state employment experience upon initial hire or promotions.

*Effect:*    DSS may have promoted an unqualified candidate. Ineffective hiring and promotion decisions affect agency operations and erode employee morale.

*Cause:*    Lack of management oversight contributed to this condition. DSS relied upon the candidate's statement of experience to meet the special experience requirement, because DSS assumed that the state reviewed the candidate's prior non-employment experience upon initial hire. DSS lacks adequate procedures to confirm candidate experience.

*Prior Audit Finding:*    This finding has not been previously reported.

*Recommendation:*    The Department of Social Services should only hire and promote candidates who meet job description requirements. The department

should formalize written hiring and promotion policies and procedures to verify a candidate's work experience and professional credentials. (See Recommendation 23.)

*Agency Response:*    "The Agency agrees with this finding and affirms that the Agency's existing written policies and procedures regarding the hiring and promotional process align with the finding's recommendations. Within the Recruitment Workflow there are action steps to verify a candidate's work experience and professional credentials. Two distinct forms for conducting reference checks are now utilized for consideration of initial state employment and transfer from another state agency.

In the cited case, the Agency was reliant upon prior human resources verification of non-state employment experience for this internal promotion. The reference information documented in this individuals' personnel file demonstrated no cause to call into question the experience reported by the candidate nor the credibility of the reference itself. Current reference checks utilized by the Department for the consideration of initial state employment and the transfer from another state agency have been augmented and fully aligned with the auditor's recommendations."

**Working out of Position Classification**

*Background:*    An employee worked as an Administrative Assistant in the Commissioner's Office since November 2018. In February 2019, DSS promoted this employee to the position of Equal Employment Opportunity (EEO) Assistant within the Affirmative Action Division.

*Criteria:*    Sound business practice dictates that employees should perform job duties in accordance with their position.

Section 5-227a of the General Statutes provides that, whenever an employee's position in the classified service is reclassified, the promotion of the employee shall be made without examination provided (1) the employee meets the minimum qualifications for the reclassified position; and (2) the employee has received a satisfactory appraisal on the two most recent consecutive performance evaluations.

The Department of Administrative Services (DAS) General Letter No. 226 provides the procedures and requirements for promotions through reclassification under Section 5-227a of the General Statutes.

Section 5-237-1 of the State Regulations requires state agencies to file an annual evaluation for each permanent employee at least three months prior to the employee's annual salary increase date.

## Lebron, Jose

| | |
|---|---|
| **From:** | Escudero, Martha <Martha.Escudero@cga.ct.gov> |
| **Sent:** | Wednesday, October 21, 2020 9:02 AM |
| **To:** | Lebron, Jose |
| **Subject:** | RE: Audit fam 2 |

Good morning, Jose,

I'm sorry I was out and just returned. We will issue a finding in our upcoming FY16,17,18 audit report. In addition, the issue was forwarded to the AGs office for their review. The issue was broader based, not just relating to Ms. Godburn. However, related to Ms. Godburn, during our review, we did not get the understanding that DAS would not rescind the fam 2 from Ms. Godburn, so that is part of the reason why it was forwarded to the AGs office.

When the report is issued, I will forward the finding. In addition, I will keep you posted on what the AG says.

Thanks,
Martha


-----Original Message-----
From: Lebron, Jose <Jose.Lebron@ct.gov>
Sent: Tuesday, October 20, 2020 3:42 PM
To: Escudero, Martha <Martha.Escudero@cga.ct.gov>
Subject: Audit fam 2
Importance: High

So yesterday was the drop dead date to have the ability to remove my current manager from her fam2 position. When I contacted you back in July you were confident that the investigation would be complete by now. I was wondering if and when the investigation will be complete or if you found anything. I know with this pandemic it must be stressful.

Evh    E - I

**Lebron, Jose**

| | |
|---|---|
| **From:** | Jacob, Annie |
| **Sent:** | Wednesday, October 6, 2021 2:47 PM |
| **To:** | Lebron, Jose |
| **Subject:** | RE: PCMH+ |

**Absolutely NO! Nicole did not create PCMH + program**. I am giving this statement with evidence and truth as I have been with DSS for the past 30 years of service and history. Below is the details about Department's Pay For Performance (P4P) and  Value Based Program history:

DSS's first P4P program started with PCCM as a pilot program back in 2009 - 2010. It was a pilot program for 2 years where I was an Actuary who developed that program with Dr. Zavoski and David Parella and Rivka Wiser.

Then in 2010, we expanded it to PCMH program as the 2nd P4P and implemented in 2012. The team was Dr. Mark Scahfer, Dr. Zavoski, Annie Jacob and Erica Garcia.

Then when Dr. Shafer left DSS, he developed statewide P4P and DSS named it PCMH +. So, **PCMH + was developed by Dr. Zavoski, Dr. Shafer and many of us (including myself)** with experience from our past. Nicole was not even in that early picture. Once the program launched, I guess Nicole came in picture as a liaison between DSS and Mercer for payments and paper pushing etc.

That being said, Nicole can not even create PCMH+ program as she do not even have the credentials as she was just an FAO (Fiscal Administrative Officer). This position is not eligible to create a program like PCMH+. So, Nicole did not create PCMH+ program.


-Annie

Annie Jacob
Principal Analyst, MA, Actuarial Science

DSS/Division of Health Services
55 Farmington Ave,
Hartford, CT 06105
(860) 424 5731 Direct
Annie.Jacob@ct.gov


**From:** Lebron, Jose <Jose.Lebron@ct.gov>
**Sent:** Wednesday, October 6, 2021 1:34 PM
**To:** Jacob, Annie <Annie.Jacob@ct.gov>
**Subject:** RE: PCMH+

So Nicole created the program?

CT HR

# State of Connecticut Human Resources
### EMPLOYEE SERVICE RATING
### ADMINISTRATIVE AND RESIDUAL (P5) UNIT

Form #:  Per 127
Revision Date: 3/2000

INSTRUCTIONS: Read instructions on reverse
Side carefully before completing this report

TO: **Human Resources Business Center, Dept. of Administrative Services, 165 Capitol Avenue, Hartford, CT 06106**

TYPE OF SERVICE RATING

| ☐ INITIAL PROBATIONARY | ☒ ANNUAL | ☐ PROMOTIONAL | ☐ OTHER (Specify) |
|---|---|---|---|

| EMPLOYEE NAME | CLASS TITLE | | | |
|---|---|---|---|---|
| Jose Lebron | Principal Cost Analyst | | | |

| DEPARTMENT OR INSTITUTION | PERIOD COVERED | FROM | TO | AI DATE |
|---|---|---|---|---|
| Department of Social Services | | 10/1/2020 | 9/30/2021 | |

| FACTORS | Good or Better | | | Less Than Good | | DEFINITION OF RATINGS |
|---|---|---|---|---|---|---|
| Evaluate the employee on the job now being performed based on the report period. Check (x) the rating category which most nearly describes your overall judgment for each of the job factors | EXCELLENT | SUPERIOR | SATISFACTORY | FAIR | UNSATISFACTORY | EXCELLENT = Distinctly and consistently outstanding<br>SUPERIOR = Definitely above the norm.<br>SATISFACTORY = Meets basic requirements<br>FAIR = Need for improvement.<br>UNSATISFACTORY = Definitely inadequate.<br>NOTE: *Written explanations are required for ratings of "Less than Good", and they are recommended for ratings of "Excellent"* |
| **QUALITY OF WORK:**<br>Thoroughness, accuracy and appearance of work, regardless of volume | X | | | | | EXPLANATION<br>Jose is a subject matter expert in hospital reimbursement. He oversees a large body of work including supplemental payments, and quarterly enhanced physician payments. This work is highly complicated and requires attention to detail and knowledge of policy and federal reimbursement methodologies which Jose masters perfectly. His work has been recognized by DSS leadership, OPM, and external stakeholders. Jose is highly accurate, consistent, and meets deadlines quickly. Jose took additional responsibilities during the COVID-19 public health emergency and is lead in relief hospital funding, and oversees specialized projects such as ED utilization bed need and out of state reimbursement. He is thorough and accurate with subject matter expert suggestions to help create policy and internal guidance around complicated reimbursement methods.<br><br>SUGGESTIONS FOR IMPROVEMENT<br>None |
| **QUANTITY OF WORK:**<br>The amount of work produced under normal conditions, disregarding errors, and giving full consideration to contributions in all official areas. | X | | | | | EXPLANATION<br>Jose continues to produce high-volume exceptional work while balancing competing projects and deadlines. He continues to lead hospital reimbursement for the Medicaid program and is consulted by management and DSS leadership regarding value based reimbursement policy. His work is always consistent and he is able to handle multiple complicated projects at one time while meeting tight deadlines.<br><br>SUGGESTIONS FOR IMPROVEMENT<br>None |
| **DEPENDABILITY:**<br>The ability to do assigned tasks on schedule under normal circumstances with a minimum of supervision. Unauthorized absence should be considered as it affects dependability. | X | | | | | EXPLANATION<br>Jose meets all deadlines quickly, and is always willing to support peers. Jose is thoughtful and able to share his extensive knowledge and experience to help inform policy decisions and to support ongoing projects. He often outreaches to other units in the division to support projects that overlap his work and offers suggestions and guidance to others in the development of complex policy and reimbursement decisions.<br><br>SUGGESTIONS FOR IMPROVEMENT<br>None |
| **ABILITY TO DEAL WITH PEOPLE:**<br>Relationships with staff and the public; cooperativeness. | X | | | | | EXPLANATION<br>Jose is always willing to help peers and coworkers. Jose is willing to share knowledge and experience with incoming members of the unit. He works closely with division leadership, management, the fiscal division, hospital administrators, state contractors, federal agencies, as well as other state agencies to advise and support discussions regarding hospital reimbursement. He is always helpful and supportive of others and is well respected by the unit and his coworkers.<br><br>SUGGESTIONS FOR IMPROVEMENT<br>None |

| SUPERVISORY ABILITY:<br>(if applicable)<br>The ability to delegate authority and<br>accomplish assigned tasks through<br>subordinates | | | | | EXPLANATION<br>N/A | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | SUGGESTIONS FOR IMPROVEMENT | | | |

| RATED BY: | SIGNATURE<br>Nicole Godburn /s/ | TITLE<br>Fiscal Manager | DATE<br>9/17/2021 | "Less Than Good" service rating must<br>include a recommendation regarding |
|---|---|---|---|---|
| REVIEWED BY: | SIGNATURE<br>*Rose Marie Owens*    HR Generalist 2 | TITLE | DATE<br>09/17/21 | the annual increment and should result<br>in counseling of the employee |
| APPOINTING AUTHORITY OR<br>AUTHORIZED<br>REPRESENTATIVE: | SIGNATURE<br>William Halsey /s/ | TITLE<br>Interim Director of Medicaid<br>and Division of Health Services | DATE<br>9/17/2021 | ☒ Award A.I.    ☐ Deny A.I. |
| EMPLOYEE: | SIGNATURE | TITLE | DATE<br>9-13-16 | |

| NOTE TO EMPLOYEE: | Your signature confirms that you have seen this report and discussed it with your supervisor. It does not indicate your agreement with<br>or approval of the rating. The supervisor must give the employee a copy of the rating at the time the employee signs it.<br>Should any subsequent change be made, all copies must be revised, and the change must be initialed by the employee |
|---|---|

Page 1

## GENERAL INSTRUCTIONS

### I. When To File A Service Rating

A Service Rating Report is to be filed at the following times:

A. During any working test period, either promotional or original, the quality of service of any employee shall be reported as either "Good or Better" for satisfactory or better performance and the form shall be on file in the office of the appointing authority not more than six nor less than two weeks prior to the termination of the period; or "less than good" performance, and the report shall be approved by the appointing authority and filed with the Commissioner of Administrative Services; an unsatisfactory service rating of an employee serving a working test period necessitates his/her release or demotion to a class in which he/she has prior status not later than upon termination of the working test period.

B. When the performance of an employee with permanent status has been "Less than Good"; if the reviewer recommends precluding the annual salary increase, the report shall be approved by the appointing authority and filed with the Commissioner of Administrative Services prior to the employee's increase date.

C. When the appointing authority wishes to amend a previously submitted Fair or "Less Than Good" service report due to marked improvement in an employee's performance, such report shall be filed with the Office of the Commissioner of the Department of Administrative Services not later than two weeks prior to the increase date, and it shall have precedence over previous reports and shall restore the annual increase.

D. Annually for each permanent employee, said annual rating is to be filed in the office of the appointing authority at least three months prior to the employee's annual increase date.

E. At such other times as the appointing authority deems that the quality of service of an employee should be recorded.

### II. Preparing The Service Rating

A. For the job factor "Dependability", in considering abuse of attendance, the rater may consider absences exceeding the contractually earned leave days, except that he/she may also consider clearly identifiable "pattern" absences and/or repeated or extended unauthorized leave by an employee.

B. All ratings are to be discussed with the employee by the employee's immediate supervisor. The employee should be asked to sign the report, indicating that the employee has seen the form and discussed it with the immediate supervisor. The effective date of the rating shall be the date it is approved by the appointing authority.

C. A copy of a "Less than Good" service rating is to be furnished to the employee, after having been approved.

### III. Consequences Of A "Less than Good" Service Rating

A. A rating of "Fair" in two or more job factors constitutes an overall "Less than Good" service rating and _may_ result in the employee being precluded from receiving the next annual salary increase.

B. A rating of "Unsatisfactory" in one or more job factors constitutes an overall "Less than Good" service rating. If the employee receives a "Less than Good" service rating while on an initial or promotional working test period, the employee must be terminated or demoted, respectively, to a job class in which he/she held prior permanent status. If the employee receives a "Less than Good" rating and is not on a working test period, the "Less than Good" rating _may_ preclude the employee from receiving an annual increase and _shall_ preclude the employee from participating in Agency promotional

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Jose LeBron**<br>**28 Jensen Drive**<br>**Middlebury, CT 06762** | From:  **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**15 New Sudbury Street, Room 475**<br>**Boston, MA 02203** |

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | JAN 27 2022 PM2:48<br>FILED-USDC-CT-HARTFORD |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2020-01497 | **Amon L. Kinsey, Jr.,**<br>**Supervisory Investigator** | **(617) 865-3672** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
|  | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| X | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Feng K. An,**
**Area Office Director**

November 1, 2021

*(Date Issued)*

Enclosures(s)

cc:

**DEPARTMENT OF SOCIAL SERVICES**
**55 Farmington Avenue**
**Hartford, CT 06106**

My Name is Jose L. Lebron.  I identify as a Hispanic male. The reason for filing my discriminatory lawsuit federally is to the following reasons:

a) The State of Connecticut Department of Social Services refused to promote me to my current position even though I met all the requirements IE education and work experience.  To get promoted I had to file a grievance through my union even though my boss at the time tries his best to get me promoted.

b) The individual who was promoted is a White female.  This individual was denied the opportunity to apply for my current position due to lack of work experience.  She ultimately got promoted illegally once the State of Connecticut Dept. of Administrative Services removed the testing requirements for state jobs.  She was interviewed by me and other State employees even though she did not hold the position of Associate Accountant which is a prerequisite to apply for the position.  This said white female also was promoted to Fiscal administrative Manager 2 illegally.  The State Auditors has consecutive findings regarding this individual.  The excerpts of those findings are enclosed see attachments C-2 and 3.

The documents speak for themselves.  Everything that I have said is true and not fabricated.  The State's denies any wrongdoing.  I am asking the federal government to look at the documents and determine if any wrongdoing has occurred and if they determine that none has occurred even though in my mind, I believe it to be true I will accept the outcome because its not the State of Connecticut investigating themselves.