UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE L. LEBRON,
 *Plaintiff*,

 v.

STATE OF CONNECTICUT,
DEPARTMENT OF SOCIAL SERVICES,
 *Defendant*.

No. 3:22-cv-155 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

 Jose L. Lebron ("Mr. Lebron") filed this lawsuit *pro se* against the State of Connecticut Department of Social Services ("Department of Social Services" or "Defendant") alleging the Department of Social Services' failed to promote him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Compl., ECF No. 1 (Jan. 27, 2022) ("Compl.").

 The Department of Social Services has moved to dismiss the Complaint in its entirety for failure to state a claim and lack of subject matter jurisdiction. *See* Mot. to Dismiss, ECF No. 19 (June 24, 2022) ("Mot.").

 For the following reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part.**

 Mr. Lebron's ADEA claim and claim for punitive damages under Title VII are dismissed. Mr. Lebron's Title VII claim is not dismissed.

 In light of this ruling and order, the Department of Social Services' motion to stay is **DENIED as moot**.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A. Factual Allegations

Mr. Lebron is a 57-year-old Hispanic male who worked for the Department of Social Services as a Principal Cost Analyst. *See* Compl. at 12, 30.

Mr. Lebron allegedly applied for a promotion to the Fiscal Administrative Manager position but did not receive it even though he allegedly was qualified for the job based on his education and work experience. *Id.* at 2, 4, 12, 30. Ms. Godburn, a white woman, was allegedly promoted "illegally" even though she allegedly did not have the required qualifications for the position. *Id.* at 4. More specifically, Ms. Godburn allegedly did not have experience in an Associate Accountant position, which was allegedly a prerequisite to apply for the promotion. *Id.* at 30.

The Department of Social Services allegedly received fifty-six applications for the Fiscal Administrative Manager position. *Id.* at 12. Only seven applicants allegedly met the minimum qualifications and were invited to interview. *Id.* Three of those seven applicants allegedly declined the interview. *Id.* Mr. Lebron and Ms. Godburn were both allegedly interviewed for the position. *Id.*

The Department of Social Services has a hiring panel of several employees who allegedly interview candidates using identical questions that were approved by the Human Resources and Affirmative Action unit. *Id.* at 7. The hiring panel allegedly used questions that were "tailored to fit the targeted white female resume." *Id.*

The Department of Social Services allegedly stated that it promoted Ms. Godburn instead of Mr. Lebron because Ms. Godburn allegedly had experience with "a value-based payment approach." *Id.* at 12. This was allegedly pretext. *Id.* at 7–8.

Ms. Godburn was allegedly promoted after the State of Connecticut Department of Administrative Services removed the testing requirements for all state jobs. *Id.* at 30.

State of Connecticut auditors allegedly investigated the hiring and promotion practices of the Department of Social Services and identified issues with Ms. Godburn's prior promotions as well as other hiring decisions. *Id.* at 7, 30.

### B. Procedural History

On January 27, 2022, Mr. Lebron filed a Complaint alleging violations of the ADEA and Title VII. *See* Compl.

On April 6, 2022, Mr. Lebron filed a motion for order to grant the relief requested in the Complaint. *See* Mot. for Order, ECF No. 9. The Court denied the motion on April 7, 2022, because there was no indication that Mr. Lebron had properly served the Department of Social Services. *See* Order, ECF No. 10.

On May 16, 2022, the Department for Social Services filed a motion for security for costs. *See* Mot. for Sec. for Costs, ECF No. 14. On May 17, 2022, the Court granted the motion and ordered Mr. Lebron to deposit or file a bond with sufficient surety. *See* Order, ECF No. 15.

On June 24, 2022, the Department of Social Services filed a motion to dismiss. *See* Mot.

On July 18, 2022, Mr. Lebron filed a response to the motion to dismiss. *See* Resp. to Mot. to Dismiss, ECF No. 22 ("Opp'n").

On July 18, 2022, Mr. Lebron filed a motion to participate in electronic filing. *See* Mot. to Participate in Electronic Filing, ECF No. 25. On July 19, 2022, the Court granted this motion. *See* Order, ECF No. 26.

On August 1, 2022, the Department of Social Services filed a reply memorandum in support of its motion to dismiss. *See* Reply to Pl.'s Obj. to Def.'s Mot. to Dismiss, ECF No. 28 ("Reply").

On September 1, 2022, Mr. Lebron filed a second objection to the Department of Social Services' reply. *See* Resp. to Reply, ECF No. 29 ("Resp. to Reply").

On September 15, 2022, the Department of Social Services filed a reply to Mr. Lebron's second objection to the motion to dismiss. *See* Reply to Pl.'s Second Obj., ECF No. 30 ("Second Reply").

On November 10, 2022, the Department of Social Services filed a motion to stay discovery pending this Court's decision on the motion to dismiss. *See* Mot. to Stay Disc., ECF No. 31 ("Mot. to Stay").

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary,

4

hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

The Department of Social Services argues that the Complaint should be dismissed because 1) Mr. Lebron has failed to state a claim of discrimination on the basis of race under

Title VII, 2) Mr. Lebron's ADEA claim is barred by sovereign immunity, and 3) Mr. Lebron's punitive damages claim is barred by sovereign immunity. *See* Mot. at 1.

The Court will address each argument in turn.

### A. Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [among other grounds] such individual's race." 42 U.S.C. § 2000e-2(a)(1). At the pleadings stage, Title VII requires a plaintiff asserting a discrimination claim to allege he "[1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The facts necessary to survive a motion to dismiss should align with the "reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.* Therefore, "the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, the complaint only needs to support "a minimal inference of discriminatory motivation." *Id.*

The Department of Social Services argues Mr. Lebron has not alleged facts to show that he was qualified for the position or that there was an inference of discriminatory motivation in the failure to promote him. *See* Mot. at 5. More specifically, the Department of Social Services argues that purposeful discrimination requires more than awareness of the consequences and, in the Department of Social Services' view, the Complaint lacks facts tending to create an inference that the failure to promote was based on a protected characteristic. *Id.* at 5–6.

7

Mr. Lebron argues that he alleged a pattern of promoting and hiring only white females. *See* Opp'n at 1. Mr. Lebron also argues that Ms. Godburn was not qualified for the position and that audits performed by independent auditors confirmed this. *See id.* Additionally, Mr. Lebron argues that the interviewing committee did not come up with uniform interview questions, but, instead, the former Medical Director of the Department of Social Services "derived the questions to give the said white female an advantage over the 57 year[] old Hispanic male." *See* Resp. to Reply at 1. Mr. Lebron further argues that the former Medical Director "only promotes Caucasian[] females." *Id.* Finally, Mr. Lebron emphasizes that there are discrepancies in the interview notes and interview recording of Ms. Godburn which suggests an inference of discrimination. *Id.*

In response, the Department of Social Services argues that "statistical or demographic allegations cannot be used to bolster a claim that a personnel action was undertaken for discriminatory reasons." *See* Reply at 2. The Department of Social Services also argues the interview notes "plainly summarize" that Ms. Godburn had the requisite experience for the position. *Id.* at 3.

The Court disagrees.

While Mr. Lebron cannot file exhibits to bolster his Complaint to survive a motion to dismiss, *see Rahim v. Barsto*, No. 3:22-cv-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) ("Under the Federal Rules of Civil Procedure, a complaint must be a plain and concise statement of facts constituting a claim recognized by law, and therefore a plaintiff may not file

exhibits in lieu of alleging facts in the complaint against a defendant."), Mr. Lebron has nonetheless stated a Title VII claim in the body of his Complaint.

"[T]he evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is minimal." *Littlejohn*, 795 F.3d at 313 (internal quotation marks and alteration omitted) (quoting *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)). "To allege the requisite discriminatory intent, a plaintiff may allege 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). Indirect evidence may include "evidence that similarly situated comparators outside of Plaintiff's protected class were treated more favorably than Plaintiff." *Id.* (citing *Littlejohn*, 795 F.3d at 312). "In cases such as this, courts generally will look to whether a plaintiff and his comparators were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Mr. Lebron alleges that he was not promoted, even though he had all the necessary requirements, including "IE education and work experience." *See* Compl. at 30. Additionally, Mr. Lebron alleges that a "White female" was promoted even though she did not meet the job requirements. *Id.* at 4, 30. Given the "exceedingly low burden" required of plaintiffs at the pleading stage, *see Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order), Mr. Lebron's allegations are sufficient to state a Title VII claim. *See Littlejohn*, 795 F.3d at 311 ("[W]hat must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment

9

action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."); *see also Claytor v. Wilkie*, No. 3:19-cv-1363 (VAB), 2020 WL 5097253, at *3–4 (D. Conn. Aug. 28, 2020) (finding the plaintiff had stated a Title VII claim where she alleged she received a negative work evaluation that lead to financial and advancement consequences and "her white, male supervisor" gave "a white, male co-worker a higher evaluation despite [the co-worker's] alleged disciplinary issues and worse performance").

Accordingly, the Court will deny the motion to dismiss Mr. Lebron's Title VII claim.

### B. Punitive Damages

"Punitive damages are a discretionary moral judgment that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015) (citation and internal quotation marks omitted). Typically, punitive damages are available for intentional discrimination claims under Title VII. *See* 42 U.S.C. § 1981a(b)(1) (authorizing punitive damages under Title VII for intentional discrimination). Punitive damages are not, however, available against "a government, government agency or political subdivision." *Id.*

The Department of Social Services argues that, even if Mr. Lebron has stated a claim under Title VII, he is not entitled to punitive damages because the Department of Social Services is a government agency and therefore exempt under the statute. *See* Mot. at 8–9.

The Court agrees.

The Department of Social Services is a State of Connecticut agency and therefore, Mr. Lebron would not be entitled to punitive damages, if he prevailed. *See, e.g., Norris v. N.Y.C. Coll. Of Tech.*, No. 07-cv-853, 2009 WL 82556, at *5 (E.D.N.Y. Jan. 14, 2009) (finding that the New York City College of Technology could not be "held liable for punitive damages under

Title VII" because Title VII does not authorize punitive damages "against a government, government agency or political subdivision").

Accordingly, the motion to dismiss will be granted on these grounds.

### C.  ADEA

The Eleventh Amendment provides a jurisdictional bar to private suits against states and their agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219–20 (N.D.N.Y. 2014) (citation omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

The Department of Social Services argues the ADEA claims are barred by sovereign immunity and therefore, must be dismissed for lack of subject matter jurisdiction. *See* Mot. at 8.

The Court agrees.

The ADEA does not abrogate States' sovereign immunity, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000) (finding that "the ADEA does not validly abrogate the States' sovereign immunity"), and Connecticut has not waived it, *see, e.g.*, *Mallison v. Conn. Off. of Early Childhood*, No. 3:21-cv-1641 (SVN), 2022 WL 6771028, at *12 (D. Conn. Oct. 11, 2022) (finding that Connecticut has not consented to suit under the ADEA). Therefore, the Department of Social Services is immune from suit under the ADEA.

Accordingly, Mr. Lebron's ADEA claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part.**

Mr. Lebron's ADEA claim and claim for punitive damages under Title VII are dismissed. Mr. Lebron's Title VII claim is not dismissed.

In light of this ruling and order, the Department of Social Services' motion to stay is **DENIED as moot**.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of January, 2023.

      /s/ Victor A. Bolden     
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE